# FILED

OCT 3 1 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT**
FOR THE DISTRICT OF COLUMBIA

--------------------------------------------------x

1) Eric S. Kalugin, Pro-Se
SSN # XXX-XX-8149
51 King Road
Landing, NJ 07850
Tel: 973-601-7757

2) Chris R. Dicicco(1948)
21 Miller Drive
Sewell, NJ 08080
Tel: 856-803-6076

3) Domithilla Epuechi(1966)
1019 Clinton Ave.
Irvington, NJ 07111
Tel: 973 517-6144,

Case: 1:12-cv-01792
Assigned To : Howell, Beryl A.
Assign. Date : 10/31/2012
Description: TRO/PI

On his behalf of themselves and all
Others similarly situated.

Plaintiff's,

COMPLAINT

Timothy F. Geithner, as United
States Secretary of the Treasury,
Fannie Mae, Freddie Mac, Ginnie
Mae, Bank of America, Chase Man-
hattan Bank, Citibank, Ally Financial,
Ally Bank, PHH Mortgage Corporation,
Bayview Financial, LP, Ocwen Financial
Corporation, Litton Loan Servicing, LP,
Goldman Sachs, OneWest Bank,
Mortgage Electronic Registration
System, Merscorp, Wells Fargo Bank,
Deutsche Bank Aktiengesellschaft, Deutsche Bank
National Trust Company, HSBC Bank USA, NA,
Bayview Loan Servicing LLC,all Financial
Institutions, Trusts,

Defendants.

--------------------------------------------------------x

INTRODUCTION

The above named Plaintiffs are specifically the types of people that the federal government's foreclosure prevention program was intended to help. All had good jobs, the majority became unemployed during the financial crisis, some were stricken with illness, victims of accidents or were parties in a divorce. All became unable to meet their mortgage payments because of the aforementioned and difficulty, in some cases, from their inability to collect rents from their tenants(a majority) as a result of hardships related to the financial crisis.

All of the above Plaintiffs signed Mortgage Contract documents that were, presumably created by Fannie Mae/Freddie Mac, which were universally used and were the industry standard. A closer review of these documents reveals that they were **modified** from the original Fannie Mae/Freddie Mac version, wherein, an additional party of interest was added to the Original Lender, as an Additional Mortgagee, namely MERS with an address in Flint Michigan. The altered versions verbiage is as follows:

" Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that Borrower is the mortgagor under this Security Instrument. ( C ) "MERS" is is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box2026, Flint, MI 48501-2026, tel. (888)-679-MERS".

In contradiction, the **original** Fannie Mae/Freddie Mac version as follows:

"( C ) Lender is ________________. Lender is a___________organized and existing under the laws of ______________. Lender's address is________________. Lender is the mortgagee under this Security Instrument."

All Fannie Mae/Freddie Mac Forms, from and for the States of Alabama to the state of Washington, used Forms 3001 through 3051 (SEE EXHIBIT B) a representation of the **original** version, without any concealments regarding contractual changes or add-on's and show, correctly, that **only one Lender exists.**

By reviewing the version in which MERS becomes an **Additional Party of Interest** in the loan, property and contract, the authors of these instruments deliberately added a **second Lender** to the Mortgage Security Contract, knowing all to well, there **cannot be two Lenders** on the same loan. Further, they knew or must have known that the **Mortgagee is the Lender** and by definition, including legal, the Mortgagee and the Lender are the same. Millions of American borrowers were tricked and thereby defrauded by the concealment of the altered verbiage, resulting in nightmares regarding the necessity for borrowers, in a foreclosure or sale, to have a clean clear Title, from the Originator to the actual holder of the Note and Mortgage(in most cases the Original Note was lost or destroyed). Investigations revealed that the real reason for having MERS as a Mortgagee or Payee was to facilitate a return conduit for an investor. The Loss

Payee/Mortgagee functioned as a receiver, Beneficiary for **Insurance Payouts** for non-performing mortgages. MERS, automatically, as the Mortgagee, became a **beneficiary** for any insurance payouts. Exposing the concealed, real function of MERS, was to become a Nominee for the Lender. However the Lender never authorized MERS as it's nominee, because within the mortgage documents, the Borrower and executor of the Mortgage Instruments nominated MERS as a Nominee and Mortgagee, when in reality MERS should have, according to contractual law, received their authority from the Lender, in order to become the Nominee. Nominee appointment, cannot be given by the Borrower/Executor(he can only agree to it) of the Mortgage Contract. "MERS as a Corporation is an entity that tracks mortgages for Lender members to create a National Mortgage Data Base for parties involved in mortgages", **However**, the entity never loaned money, therefore it is not the Real Party of Interest in a Loan.

Because of the shoddy concealment and document alterations of facts relating to the identity of the Mortgagees, Lenders and/or Assignees and Nominees, all Plaintiffs have suffered damages by being illegally foreclosed upon, directly or indirectly, in the name of MERS as a Nominee, used, in order to transfer Notes and Mortgages from the Originator, to the actual holders of Notes and Mortgages, when in fact required documentation of the paperwork was missing, and **Robo-Signers** were used to authenticate and transfer the Notes and Mortgages. Greed and Expedience, using fraudulent methods to deprived borrowers of their right to Due Process.

## PARTIES IN THIS COMPLAINT

The Lead Plaintiff, 1) Eric S. Kalugin, Pro-Se, SSN# XXX-XX-8149, residing at 51 King Road in Landing NJ 07850 Tel:Number 973-601-7757. Landing is in Morris County NJ, 2) Chris R. Dicicco(1948), 21 Miller Drive, Sewell, NJ 08080 Tel: 856-803-6076. Gloster County, NJ, 3) Domithilla Epuechi(1966), 1019 Clinton Ave., Irvington, NJ 07111 Tel: 973-517-6144. Essex County NJ., On behalf of themselves, and all others similarly situated.

The Defendants are:

1. Timothy F. Geithner as United States Secretary of the Treasury, 1500 Pennsylvania Avenue NW, Washington DC 20020, Telephone Number 202-622-2000 , Fax 202-622-6415.
2. Fannie Mae, 3900 Wisconsin Avenue NW in Washington DC 20016-2892, Telephone Number 202-732-6643.
3. Freddie Mac, 8200 Jones Branch Drive in Mc Lean VA 22102-3110, telephone Number 703-903-2000.
4. Ginnie Mae, Potomac Center South, 550 12th Street SW Third Floor Washington DC 20024, Telephone Number 202-708-1535. The mailing address is 451 7th Street Room B-133 Washington DC 20410, Telephone Number 202-708-1535.
5. Bank of America, 100 North Tryon Street, Charlotte NC 28202, Telephone Number 980-335-3561.

6. Citibank, 399 Park Avenue , New York NY 10024 , Telephone Number 1-800-627-3999.

7. Chase Manhattan Bank, 1 Chase Manhattan Plaza, New York NY 1005, Telephone Number 212-552-3819.

8. Ally Financial, Tower 200 Renaissance Center, Detroit MI 48243, Telephone Number 313-556-5000.

9. Ally Bank, Tower 200 Renaissance Center, Detroit MI 48243, Telephone Number 313-556-5000

10. PHH Mortgage Corporation, 4001 Leadenhall Road, Mount Laurel NJ 08054, Telephone Number 856-917-1744.

11. Ocwen Financial Corporation, 1661 Worthington Road Suite 100, P.O. Box 24737 in West Palm Beach FL 33409, Telephone Number 561-682-8400.

12. Litton Loan Servicing LP, 4828 Loop central drive, Houston TX 77081, Telephone Number 713-960-9676.

13. Goldman Sachs, 200 West Street, New York NY 10009, Telephone Number 212-902-1000.

14. OneWest Bank, 888 Walnut Street, Pasadena CA 91101, Telephone Number 800-669-2300.

15. Deutsche Bank Aktiengesellschaft, (Corporate Headquarters) Taunusanlage 12, Frankfurt, Germany 60325, Telephone Number 011-49-69910-00.

16. Deutsche Bank National Trust Company, 1761 East Saint Andrew Place, Santa Ana CA 92705-4934, Telephone Number 714-247-6000.

17. Wells Fargo Bank, 420 Montgomery Street, San Frisco, CA 94104 Telephone Number 415-396-4157.

18. HSBC Bank USA, NA, 11 East Broadway 11th Floor New York, NY 10038 Telephone Number 212-525-5000.

19. Mortgage Electronic Registration Systems (MERS), 1818 Library Street, Suite 300, Reston, VA 20190 Phone Number 888-679-6377. (NOTE-on Mortgage Documents MERS uses the "Shell Address" of PO Box 2026, Flint, MI 48501-2026).

20. Merscorp, 1818 Library Street, Suite 300, Reston, VA 20190 Telephone Number 888-679-6377.

21. Bayview Financial LP, 4425 Ponce DeLeon Boulevard, Coral Gables, FL 331406 Telephone Number 305-854-8880.

22. Bayview Loan Servicing LLC, 4425 Ponce DeLeon Boulevard, Coral Gables, FL 331406 Telephone Number 305-854-8880.

23. Banking Institutions Jane Doe, John Doe

24. Trusts Jane Doe, John Doe

## I. BASIS OF JURISDICTION

The basis of this suit is referenced in 28 U.S.C. paragraph 1332 and 1331, in which citizens of various states are suing citizens of various others states.

Additionally this matter is a Federal question case in which Defendants violated State as well as Federal laws as noted in the Truth and Lending Act (TILA) paragraph 1638 (a) by overcharging plaintiff's for Title Insurance and failing to include the overcharge on their HUD-1 Disclosure Statements "finance charge", thereby entitling plaintiffs to statutory recoupment of damages and costs pursuant to 15 U.S.C. paragraph 1640.

Furthermore, defendant's, Loan Disclosure violations extended to abuse of the , **Gramm-Leach Blily Act**, which is specifically designed to protect personal financial information and prevent identity theft, adding to their deceptive practices. Additional violations of the: **Truth-In-Lending Act (TILA)**1968.) This statute is contained in title I of the **Consumer Credit Protection Act**, as amended (15 U.S.C. P 1601 et seq.) The regulations implementing the statute, which are known as "Regulation Z", are codified at 12 CFR Part 226; **Home Ownership And Equity Protection Act (HOEPA)** of 1994 which addresses deceptive and unfair practices in home equity lending, as in the rules contained in Section 32 of Regulation Z, and, **Real Estate Settlement Procedures Act (RESPA)** passed by congress in 1974, codified at Title 12, Chapter 27 of the United States Code, 12 U.S.C. P 2601-2617.

## II. CREATION AND INTENT: ON THE HOME AFFORDABLE MODIFICATION PROGRAM (HAMP)

What differentiates HAMP from other foreclosure prevention programs is that HAMP is the first government program to address the current foreclosure crisis that was created by legislation, was appropriated significant money by Congress, and resulted in a specific, **mandatory** uniform loan modification process. Previous programs, like Hope for Homeowners, were **voluntary** and the government simply played a role in organizing and promoting the program. The history and requirements of HAMP, however, show that Congress intended to provide a specific benefit to homeowners facing foreclosure and defendants are required to provide that benefit consistent with Constitutional due process requirements.

## A. Congressional Authorization and Oversight of the Emergency Economic Stabilization Act of 2008

After Fannie Mae and Freddie Mac were placed under conservatorship by the Federal Government, the economy and financial markets continued to deteriorate. Congress acted and this time Congress passed the Emergency Economic Stabilization Act of 2008 (the "Act"). The Act was signed on October 3, 2008 12 U.S.C. paragraph 5201(2008). The purpose of this Act was to grant the Secretary the authority to restore liquidity and stability to the federal system. Id. Congress further required that when such authority was used, it was used, in part, to "**preserve homeownership**". Id. In addition to allocating $700 billion to the United States Department of the Treasury, the Act also

specifically granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program (TARP). 15 U.S.C. paragraphs 5211,5225 (2008). When administering TARP, Congress mandated that the Secretary "shall take into consideration the "need to help families keep their homes and to stabilize communities". 12 U.S.C. paragraph 5213 (3)(2008). To that end, Congress further created two specific sections within title I of the Act related to homeowners. See Id.

Section 109 is entitled "foreclosure mitigation efforts". Section 109 specifcally states that the Secretary "shall" implement a plan to "maximize assistance for homeowners". 12 U.S.C. paragraph 5219 (a) (2008). These efforts must be coordinated with other federal agencies including the Federal Housing Finance Agency, which is the conservator for Fannie Mae and Freddie Mac. Id.

The Act requires the Secretary to consent to any reasonable loan modification offer:

The Secretary shall consent, where appropriate, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures, including term extensions, principal write downs, increases in the proportion of loans within a trust or other structure allowed to be modified, or removal of other limitations on modifications. 12 U.S.C. paragraph 5219 (c)(2008). Similarly , Section 110 requires the Federal Housing Finance Agency, as conservator for Fannie Mae and Freddie Mac, to create and implement a plan to prevent foreclosures. Specifically the Act states: The Federal property manager (defined, in part, as the Federal Housing Finance Agency) shall

implement a plan that seeks to maximize assistance for homeowners and minimize foreclosures. 12 U.S.C. paragraph 5220 (b)(2008) The statutory tools to be used by Fannie Mae and Freddie Mac include reducing interest rates and reducing the principal balance of mortgage loans. Id. Paragraph 5220(b)(2008).

## B. The Defendants created the "Making Home Affordable Program"

Pursuant to that authority, **Defendants jointly create**d and announced on February 18, 2009 the Making Home Affordable Program. (HAMP Servicer Guidelines, found in Bowman Aff., 3-5 Ex. B-D.) The Making Home Affordable Program is jointly administered by all of the Defendants. Id. As stated above, the program policies and requirements were developed by the Defendants, and by Fannie Mae acting as it's agent for the creation of the Home Affordable Program, and Freddie Mac was responsible for the auditing, of and program requirement compliance, to ensure that Mortgage Loan Servicers comply with all program requirements. **SEE:** General Accountability Office, Troubled Asset Relief Program: Treasury Actions Needed to Make The Home Affordable Modification Program Transparent and Accountable at 16, GAO-09-837 (July 23, 2009).
As designed by defendants, the Making Home Affordable Program consists of two sub-programs. (Bowman Aff. 6, Ex. E at 1.) The first sub–program relates to the creation of refinancing products for individuals with minimal or negative equity in their home, which eventually was entitled the Home Affordable Refinance Program or HARP. (Bowman Aff. 6, Ex. E at 2.)

The second sub-program relates to the creation and implementation of a uniform loan modification protocol, which eventually was entitled the Home Affordable Modification Program or HAMP. Bowman Aff. 6, EX. E at 2.) HAMP is the specific program at issue in this case. The scope of HAMP is broad; approximately 3 to 4 million homeowners in the United States are potentially eligible for the program. (Bowman Aff. 3 Ex. B at 1.) The Treasury Department has allocated at least $ 50 billion of its TARP money to fund the refinance and modification programs and offered an additional $ 25 billion of non TARP funds, totaling $ 75 billion. 12 U.S.C. paragraph 5211 (a)(1)(authorizing the Secretary to use TARP funds to purchase assets in accordance with the Emergency Economic Stabilization Act of 2008.

HAMP applies to any mortgage loan owned by Fannie Mae and Freddie Mac, as well as any loans owned by financial companies that accepted other TARP money or companies that volunteer to participate in the program. (See Generally HAMP Servicing Guidelines, found at Bowman Aff. 3-5 Ex. B-D.) As of this lawsuit, there are approximately thirty-one servicers voluntarily participating in HAMP in addition to other servicers who manage Fannie Mae and Freddie Mac mortgage loans.

**The Treasury Department, Fannie Mae and Freddie Mac Issue Directives Creating a Framework for the Implementation of HAMP.**

From March 4, 2009 to present, defendants have issued a series of directives to the servicers of mortgage loans. (See Generally Bowman Aff. HAMP Servicing Guidelines, 3-5 Ex. B-D.) The directives set forth in the framework and required protocol to implement HAMP. Id. In all cases, HAMP is clearly identified as a program of the federal government. (See Bowman Aff. 7, Ex. F at 1.)

For example, an introductory letter to homeowners is **co-branded** with the government's Making Home Affordable and servicer logos, and then begins with the following introduction:

There is help available if you are having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification Program, part of the initiative announced by President Obama to help homeowners.

HAMP's success is premised on getting a homeowner's gross monthly payment to 31 % of homeowner's gross monthly income. Prior to any foreclosure, the mortgage loan servicers are required to follow three basic steps for all distressed homeowners with the goal of reaching a monthly mortgage payment of 31 % of the homeowner's gross monthly income. (See Generally HAMP Servicer Guidelines, found at Bowman Aff. 3-5 Ex. B-D.)

The first step is to identify the homeowner's income,(initially the income may be unverified). Id. The second step is to calculate the "target payment", which is 31 % of a homeowners monthly gross income. Id. The third step is to implement

the "loss mitigation waterfall". Id. The servicer is required to use each loss mitigation tool within the waterfall, in the correct order, until the servicers reaches the target payment. Id. There are four loss mitigation tools in the waterfall, which must be applied in the following order: (a) capitalizing arrearages, meaning that accrued interest, funds advanced by the servicer, and appropriate foreclosure expenses incurred by the servicer are added to the existing principal balance of the mortgage loan; (b) reducing the interest in increments of.125% until the target payment is reached or the servicer reaches a 2% floor; (c) extending the term of the loan and amortization period by one month increments until the target payment is reached, but the loan schedule cannot exceed 480 months (40 years) from the date of the loan modification; and, finally (d) forbearing a part of the principal balance, meaning that the principal amount of the loan will be reduced in $ 100 increments until the target payment is reached. (HAMP Servicing Guidelines, found at Bowman Aff. 3, Ex. B. at 8-10, 4, Ex. C at 10-11, 5, Ex. D at 15-18.) The principal reduction, however, is not forgiven. It is simply a balloon payment that must be paid at the end of the loan term. Id. The principal balance forbearance does not accrue interest or amortize. It is also not included in calculating a monthly payment. Id.

**The Government has no specific Notification Procedures or Disclosures Requirements for a Homeowner that is denied access to HAMP.**

There are no requirements that homeowners are told the specific reason for their denial of a HAMP modification, and in fact, the government requires no notice at all. ( See Generally HAMP Guidelines, found at Bowman Aff. 3-5 Ex. B-D.) There is only one sentence in the entire guidance issued by Defendants that addresses the topic of denial and notice to homeowners. In it Fannie Mae/ Freddie Mac and the Treasury Department simply **encourage** servicers to communicate in writing, but such communication is **not required** and the notice does not need to provide any detail.("If the Servicer determines that the borrower does not meet the underwriting and eligibility standards of the HAMP after the borrower has submitted a signed trial period plan to the Servicer, the Servicer should promptly communicate that determination to the borrower in writing") Use of the word "should" is permissive. Id. The guidance also assumes that there was a trial period plan, which, as illustrated by Mr. Sendolo, there may not be. There is no guidance or requirements at all related to homeowners who are denied access to the program without been given a trial period modification. Id. In contrast all HAMP participants have very specific requirements, instructions, and model letters related to homeowners who are accepted into the program. (HAMP Servicing Guidelines, found at Bowman Aff. 3, Ex. B at 15, 4, Ex. C at 16, 5, Ex. D at 4.) For example, Defendants have created model solicitation letters, trial modification offer letters and trial modification acceptance letters that are each required to be used. Id. <u>No such documents exist related to the denial of access to HAMP. See Id.</u>

**The Government has no Uniform Process to Correct**

**Mistakes or Undo a Wrongful Foreclosure.**

As stated above, **Defendants have created** specific eligibility requirements and procedures that servicers must implement to get the monthly payments of distressed homeowners to the target payment. The government has also ordered all Fannie Mae/Freddie Mac Mortgage Loan Servicers and other participating servicers to suspend foreclosure proceedings for all homeowners until they are determined to be eligible for HAMP or, if not qualified for HAMP, considered for other loss mitigation programs offered by the particular mortgage servicer. (HAMP Servicing Guidelines, found at Bowman Aff. 3, Ex. B at 14, 4, Ex. C. at 16.)

If however a homeowner has been wrongfully foreclosed upon in violation of such requirements and mandates, Defendants have no uniform program or procedures to ensure that the homeowners are able to appeal. There is no uniform process for how an appeal is communicated or triggered by the homeowner, nor is there any evaluation criteria that would ensure a fair, timely, and unbiased response to the appeal.

## III THOUSANDS OF US HOMEOWNERS ARE AT RISK

Every day thousands of foreclosures still occur throughout the United States and pending Sheriff Sales are sky high, unknown to the American public, because the real figures are not available. A homeowner that defaulted the first time because of

too high mortgage payments, is highly likely to default again, because of unprofessional, unreasonable, cumbersome, confusing and somewhat arbitrary modification calculations, in which the borrower is still unable to cover the mortgage payment. Which most of the time is still more than one third of the borrowers monthly income. These recalculated mortgage payment amounts have reached as high as 60-70% of borrowers monthly income.

This suit does not seek money damages. It seeks, in the public interest, an Injunction or a Restraining Order against Defendants from continuing to use "MERS as a Mortgagee" on mortgage agreements. **MERS continues to use its "mortgagee" status to foreclose on mortgages, when in fact MERS never loaned any money to borrowers.** Additionally MERS cannot be an additional Lender on anyone's loan.

Further, homeowners were at risk because they were misled by the banks, lenders, and it's associates with altered security instruments/mortgage documents, violating the Federal, Gramm-Leach Bliley Act, designed to protect personal financial information and prevent identity theft.

Also misleading the Executor/Signer/Borrower, is the existence of a "Loss Payee" (concealed in the mortgage contract).

Important information was redacted from the text of the Mortgage/Lender,"Loss Payee",s documents, violating the above named Act, as well as the Truth-In-Lending Act(TILA) of 1968, a US Federal Law designed to protect consumers in credit transactions by requiring

clear disclosure of key terms of the lending arrangements and all costs. The statute is contained in Title I of the Consumer Protection Act, as amended (15 U.S.C. 1601 et seq.) The regulations implementing the statute, are known as "Regulation 2", are codified at 12CFR Part 226 and The Home Ownership and Equity Protection Act (HOEPA) of 1994, which addresses certain deceptive and unfair practices in home equity lending, amending the Truth-In-Lending Act(TLA) and establishes requirements for certain loans with high rates or high fees in section 32 of regulation Z, which implements TILA, these loans are also called "Section 32 Mortgages" and establishes disclosure requirements and **prohibits equity stripping** and other abusive practices in connection with high-cost mortgages.

All attached samples of mortgage contracts herein, are high cost Mortgages in which the Lender/Mortgagee, failed to disclose(concealed) the stealthy inclusion of a "Loss Payee" nor is there disclosure that the "Loss Payee" is the Mortgagee/Lender and Beneficiary of Insurance payouts. Further, they did not inform the Borrower/ Signer that that he is also a "Loss Payee" and beneficiary, of Insurance payouts, from Governmental and Commercial entities to Lenders Successors and Third Parties named as Mortgagee ie: MERS(Mortgage Electronic Registration Systems) and MERSCORP.

**Receiving additional Insurance Payouts** for a loan in the name of MERS as the Lender/Mortgagee/Loss Payee as described above, indicates a theft in favor of Defendants **from various sources for the same "Loss"**. Based on Worthless Instruments, or Non Performing Instruments and Contracts. This Violates the Real

Estate Settlement Procedures Act(RESPA) passed by Congress in 1974 and codified at Title 12, Chapter 27 of the United States Code,12 U.S.C. P. 2601-2617. This law was created because of various companies associated with the buying and selling of real estate, such as Lenders, Servicers, Associates, Realtors, Appraisers, Construction companies and Title Insurance Companies who, have too often participated in a kickback culture, inflating the cost of Real Estate Transactions and obscuring price competition by facilitating bait and switch tactics.

Violations of THREE sections of RESPA allow private Civil Law Suits to ensure compliance. Section 6 (Loan Servicing Provisions), Section 8 (Anti-Kick-Back Provisions) and Section 9 (Title Company Rules) of RESPA, may also be grounds for administrative actions by the Secretary under Part 24 of this Title concerning Department, Suspension, Ineligibility of Contracts and Grantees.

**FACTS**

1. Upon attached mortgage documents (Exhibit A) on Fannie Mae and Freddie Mac's uniform mortgage instrument's with MERS (Form 3031 , New jersey) states the following:

   "Borrower is the mortgagor under this Security Instrument. (C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as the nominee for Lender and its successors and assigns. MERS is the Mortgagee

under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026 Flint MI 48501-2026, tel. (888) 679-MERS.

2. Note, attached Fannie Mae/Freddie Mac mortgage documents (Exhibit B) regarding Forms 3001 through 3051, are **<u>different</u>** from MERS version in point 1. As follows:

"(C) "Lender" is_________. Lender is a _________ organized and existing under the laws of_______.

Lender's address is_________. Lender is the mortgagee under the Security Instrument."

This version is **totally different** from the version used by MERS.

a) It is simple, succinct and not confusing for the average borrower. b) Borrower knows exactly who the Lender is. c) It includes relevant Lender data and only one Lender is noted for the Loan/Mortgage.

3 Fannie Mae issued a Statement regarding its role in the mortgage process. As stated by Fannie Mae, the " Mortgage Electronic Registration Systems will facilitate Streamline Assignments of Mortgages; the Mortgage Electronic Registration Systems (MERS) was created by the mortgage industry

participants, (Defendants) to streamline the mortgage process by eliminating the need to prepare and record paper assignments of mortgages. Fannie Mae was a founding member of MERS when it was launched in 1997. MERS acts as a Nominee in local land recording offices for the Lender and Servicer. Loans registered with MERS are protected against future assignments because MERS remains the Nominal Mortgagee no matter how often servicing is traded between MERS members. MERS as an Original Mortgagee (MOM) is approved by Fannie Mae. MERS organization ID is 1000130.

For recording purposes, Fannie Mae recognizes MERS as a Nominal Mortgagee authorized to transfer the Note or Mortgage. (How can this be, if the Lender or its representative does not exist? Since Courts in the United States have ruled that MERS is only a Nominee of the Lender, it has no authority to transfer the Note. See (Exhibit C)

4 According to MERS the, entity is a wholly owned subsidiary of MERSCORP Holdings, and it's sole purpose (Mission Statement) is to serve as Mortgagee on land of records for loans registered on the MERS System. MERS is a Nominee for the Lender and subsequent buyer (Beneficial Owner) of a mortgage loan and serves as a common agent for the industry.

The MERS System is a national electronic database that tracks changes in mortgage servicing rights and beneficial ownership interests in loans secured by residential real estate.

All Mortgages (Deeds of Trust) registered on the MERS System are recorded on public land records and MERS remains the Lien Holder on these records when transfers of the promissory note or servicing rights take place between MERS members. (The MERS System is not a legal system of record nor is it a replacement for the **requirement of recording with public land recording offices.)** Interests are not transferred on the MERS System, only tracked. MERS states, that there are two ways that it becomes the Mortgagee, first at the closing, the Borrower and the Lender both agree to standard language in the security instrument making MERS the Original Mortgagee, with the right to act on behalf of the lender. However if MERS is not recorded as the Original Mortgagee on the Security Instrument, a Lender cannot sign the Mortgage to MERS after closing, it requires, specific agreement from the Borrower.

The problem is, that on the Security Instrument, only the Borrower signs the agreement. The Lender does not. Even if Lender is a Member of MERS the Lender needs to sign a document that specifically agrees that MERS officially becomes the Nominee of the Loan-Note-Mortgage. The same applies in

cases when an Assignment is executed by the Lender after the Closing.

The Borrower of a Security Instrument must be notified when agreeing to a third Parties becoming a Party of Interest in the Loan. (Exhibit D)

5. "MERS" has frequently entered into Settlements Agreements. Little known, is the Settlement with the State of Delaware, in which MERS specifically acknowledged and responded to the above issues, Signing issues, Robo -Signing, and faulty foreclosure procedures (Exhibit E).

6. Thorough dictionaryresearch, reveals, that the Lender, is the Mortgagee. However, MERS became the "Nominal Mortgagee" on the Mortgage, without having loaned any money to a Borrower. MERS stated function as an entity, is **contrary** to it's actual function. MERS can not possibly be an additional Party of Interest in the Loan, or an additional Mortgagee or Lender. It is absurd and confusing for anyone to possibly understand "MERS" stated role when, on one hand they are named as the Mortgagee and Lender and on the other hand they define themselves as a "Tracker of Mortgages" entity with no official authority. Attempted research of the words Mortgagee and Lender have produced as many definitions as attempts. Addling

and confusing the public in general and specifically the Mortgage agreement Signer (Borrower) (Exhibit F).

7 The importance of defining the Mortgagee or Payee or Lender becomes relevant in relation to Insurance payouts . Exhibit G reveals why the Lender or Bank needs a Mortgagee as an additional Party in the Mortgage Security Instrument. ie: NAMED INSURED VS. ADDITIONAL INTEREST VS. LOSS PAYEE VS. MORTGAGEE (LENDER). On page 5 of author Kelly Troy's (founder and president for ForInsuranceInvestors.com) poses the question "What is the difference"? then simply and clearly, explains the differences. Note, under Mortgagee; So far we have described the relationship between a Named Insured, an Additional Interest, and a Lost Payee; now let's discuss the true meaning of what a "Mortgagee" really is. A "Mortgagee" is the entity that actually originates and holds the Promissory Note and Mortgage Loan on real property, otherwise known as the bank or the Mortgage Lender. The Mortgagee extends financing to the "Mortgagor" who is the homeowner or borrower in the transaction. By default, all Mortgagees listed in an Insurance Policy, are also automatically considered as "Loss Payees", meaning that, as in the section above, any claim payments should, theoretically be made to **both** the Named Insured as well as every Mortgagee listed. If a party who has made a

Mortgage Loan to the Named Insured is not listed in the policy, whether **intentionally** or unintentionally, the Mortgagee will not be afforded any rights or coverage under the terms of the policy itself.

8 On all of the attached Exhibits/Copies of the Original Mortgage Security Instruments, the Name/Term/Entity "Loss Payee" was not disclosed/concealed to and from the Borrower/ Executor/ Signer. By signing the instrument the Borrower created an additional Party of Interest/ a Beneficiary for Insurance Payouts or, according to common practice and not Law, the Lenders, Successors, Servicer have created a Third Party, MERS to become the beneficiary for payouts. This, unknown to the Borrower excludes his rights as the Primary Beneficiary. Note, insurance proceeds for Physical Loss or for a Non Performing Loan are subject to Federal Income Tax and charged to the Borrower, without his knowledge or receipt of the proceeds.

**PLAINTIFF'S ARE NOT SEEKING MONITARY DAMAGES. THE PURPOSE OF THIS SUIT IS, I N THE INTEREST OF THE PUBLIC, TO PREVENT FURTHER WRONGDOING BY LENDERS, SERVICERS, MORTGAGEES AND ANY ENTITY FROM MODIFYING OR ALTERING THE ORIGINAL FANNIE MAE/FREDDIE MAC PLAIN LANGUAGE MORTGAGE AGREEMENTS .**

**PLAINTIFF'S ARE SEEKING PRELIMINARY INJUCTIVE RELIEF OR A RESTRAINING ORDER TO PREVENT LENDERS CONTINUED USE OF THE ALTERED FANNIE/FREDDIE MAC UNIFORM MORTGAGE AGREEMENT WHICH AUTHORIZES MERS AS NOMINEE AND MORTGAGEE AND THERBY PREVENTING THE CONFUSION AND DEFRAUDING OF LOAN APPLICANTS.**

The issue is simple. The average citizen, let alone the average lawyer, scholar or jurist are not aware of the true, **like**, meaning of the titles "Mortgagee", "Lender" and "Loss Payee". Further, on the Fannie Mae/Freddie Mac form, the signer (Borrower) on Security Documents, cannot possibly understand the differences or the consequences of the concealed assignment power they have ceded to MERS ie: their exclusion as an Insurance Beneficiary in the event of physical property loss or if default of mortgage payment occurs.

**MERS is not the Lender. MERS it is a mortgage tracking company** (that has exceeded it's authority), contrary to it's stated web site description. Furthermore, most of MERS corporate resolution documents are not signed by it's principal officers but by it's appointed minions who have been given **arbitrary executive titles**: lawyers working for collection agencies in foreclosure actions or other entities, Servicers for Lenders or other Third Party Servicing companies. Having thousand of **appointed "Signers / Robo-Signers"** available to meet the signatory criteria of it's assignments, reveals clearly, that the MERS System is not performing as advertised, not reliable or Legal. (When a person writes a check, the signer makes sure that the data and signature are correct, knowing that there are legal consequences to any frauds thereon.

In the interest of the American public, Plaintiff's seek the revision of the existing Mortgage agreements provided by Fannie Mae/Freddie Mac by eliminating the existing domicile requirement that the borrower live in the subject property, a human rights violation as noted in the U.S. Constitution. The American public is and will continue to be irreparably harmed by the loss of their homes through the use of expedited fraudulent documents. Documents that contain **stealthily** added parties of interest who have been given full authority as Mortgagee, Lender, or Loss Payee in the name of MERS.

**THEREFORE, PLAINTIFF'S ASK THE COURT FOR:**

a) an injunction or restraining order preventing all Lending Institutions from using the current Fannie Mae/Freddie Mac uniform mortgage instrument wherein MERS is an additional Party of Interest.

b) a restraining order against all Lending Institutions from foreclosing on mortgages, based on the irregularity of the paperwork of the Original Mortgage Instruments naming MERS as the Mortgagee or as an Additional Party of Interesting on the loan.

c) an Order requiring Fannie Mae/Freddie Mac to draft a new version on the "UNIFORM INSTRUMENT WITH MERS" (with a revised form

number) wherein the "Mortgagee" be changed to "Mortgage Tracking Company" and plain language definitions be offered.

Or as this Court deems just and proper.

Date: 23 October 2012

Signature:____________________


Lead Plaintiff:

1) Eric S. Kalugin, Pro-Se

SSN# XXX-XX-8149
51 King Road
Landing, NJ 07850
Tel: 973-601-7757
Email: ball60@gmail.com


Signature:____________________


Plaintiff:

2) Chris R. Dicicco, Pro-Se
(1948)
21 Miller Drive
Sewell, NJ 08080
Tel: 856-803-6076
Email- sharon.dicicco@gmail.com


Signature:____________________


Plaintiff:

3) Domitilla Epuechi
(1966)
1019 Clinton Ave.
Irvington, NJ 07111
Tel: 973-517-6144
Email: gromolus@yahoo.com