**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERIC S. KALUGIN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JACOB J. LEW,<br>*U.S. Secretary of the Treasury*, *et al.*,<br><br>Defendants. | Civil Action No. 12-1792 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**

*Pro se* plaintiffs Eric Kalugin, Chris Dicicco, and Domithilla Epuechi are New Jersey residents who bring this action against United States Treasury Secretary, certain government-sponsored mortgage market participants, and a slew of large financial institutions. The plaintiffs appear to claim that the defendants deceived them by naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee and nominee of the lender in mortgage documents. The plaintiffs have filed an application for a preliminary injunction, which seeks sweeping relief, including a nationwide injunction on all mortgage foreclosures. The defendants oppose the preliminary injunction and have moved to dismiss the plaintiffs' complaint on myriad grounds. For the reasons discussed below, the Court grants the defendants' motions and dismisses this case for lack of Article III standing.

## I. BACKGROUND

The Complaint in this action, filed on October 31, 2012, is short on facts. From what the Court can gather from the pleading's rambling allegations, the plaintiffs entered into mortgage contracts secured by their homes and later suffered foreclosures on those mortgages. *See, e.g.*, Compl. at 2 ("All [plaintiffs] became unable to meet their mortgage payments . . . ."); *id.* at 4

("[A]ll Plaintiffs have suffered damages by being illegally foreclosed upon directly or indirectly . . . ."). The Complaint does not state when the plaintiffs entered into the mortgages in question, who originated the mortgages, how much money was lent in the mortgages, or when or where the foreclosures on the mortgages occurred.[1] The rest of the Complaint is an extended diatribe against the designation of MERS as a nominee of the lender in mortgage agreements.[2] The plaintiffs complain that "borrowers," presumably including the plaintiffs, "were tricked and thereby defrauded by the concealment" of MERS being named as the mortgagee in loan documents. *See id.* at 3.

The plaintiffs appear to allege that denominating MERS as the mortgagee in loan documents was legally invalid, resulting in "illegal[] foreclos[ures]." *See id.* at 4. The plaintiffs also appear to allege that MERS was secretly denominated a "loss payee" for unspecified "Insurance payouts," without informing borrowers. *See id.* at 17–18. Finally, the plaintiffs allege, in passing, that the defendants "overcharge[ed] plaintiff[s] for Title insurance." *Id.* at 8. The Court construes the plaintiffs to allege common-law fraud claims, as well as claims for the violation of various federal statutes listed in the Complaint, including the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, the Graham-Leach Bliley Act, 15 U.S.C. § 6801, the

[1] The Complaint references that mortgage-related documents are attached to the pleading, *see, e.g.*, Compl. at 19 (referencing "attached mortgage documents"), but no such attachments were ever filed with the Court, and the plaintiffs have not provided the Court with any of the pertinent details contained in those documents.

[2] MERS is a private corporation, which uses an electronic database "that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011). "After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers," and "[t]he owner of the beneficial interest is entitled to repayment of the loan." *Id.* "Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system." *Id.* at 1039. "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Id.* "At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's 'successors and assigns,' and as the deed's 'beneficiary' which holds legal title to the security interest conveyed." *Id.* MERS, however, is not a party to mortgage promissory notes, and thus "is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan." *Id.* at 1039–40.

Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601–17. *See, e.g.*, Compl. at 3, 8.

On October 31, 2012, the plaintiffs filed a document captioned as a motion for a preliminary injunction, which sought (1) a stay of "all foreclosure proceedings and foreclosure sales in the United States," (2) discovery from the defendants, and (3) the "insurance payouts of [the plaintiffs'] non performing loans" and "records of insurance payouts." *See* Mot. Prelim. Inj. at 2, ECF No. 3. The defendants first began to file notices of appearance in December 2012 and throughout that month filed unopposed motions for extensions of time to respond to the plaintiffs' Complaint and application for preliminary injunction. *See* ECF Nos. 6, 9, 13, 17, 20, 25, 28, 30, 32, 33, 35, 38, 42, 45. The Court granted all of these motions. *See* Orders dated Dec. 12, 2012, Dec. 17, 2012, Dec. 18, 2012, Dec. 19, 2012, Dec. 20, 2012, and Dec. 27, 2012, ECF Nos. 8, 11, 15, 19, 23, 34, 41, 46. On January 2, 2013, the plaintiffs filed a document captioned as a "Motion for Leave to Amend Caption," which was docketed as a motion to amend the Complaint. *See* Pls.' Mot. to Amend, ECF No. 49. That motion seeks to (1) correct the names of the certain defendants that were improperly named in the original Complaint, (2) add forty new defendants, and (3) add fifteen new plaintiffs who allegedly "share the same interests, assert the same claims, and seek the same relief as the initial Plaintiffs stated in their original Complaint." *Id.* at 3–4.

All but two defendants filed oppositions to the plaintiffs' application for preliminary injunction,[3] and all defendants have filed motions to dismiss. *See* MERS Defs.' Mem. in Supp.

[3] The two defendants that have not filed oppositions to the plaintiffs' application for preliminary injunction are Bayview Financial, LP and Bayview Loan Servicing LLC. Normally, the Local Rules of this Court require a party to respond to an application for preliminary injunction within seven days. *See* LCvR 65.1. The seven-day period to respond, however, runs from the date on which the application is served. *See id.* The plaintiffs do not appear to have served their application for preliminary injunction on the defendants and have not filed any proof that such service occurred, and thus the defendants' obligation to respond to the application was never formally triggered. Any delay or failure to respond to the application for preliminary injunction on the part of the defendants is also

Defs.' Mot. to Dismiss ("MERS Mem."),[4] ECF No. 68-1; MERS Defs.' Resp. in Opp'n to Pls.' Mot. Prelim. Inj., ECF No. 69; Bayview Defs.' Mem. in Supp. Mot. to Dismiss ("Bayview Mem."),[5] ECF No. 70; Lender Defs.' Mem. in Supp. Defs.' Mot. to Dismiss ("Lenders' Mem."),[6] ECF No. 74-1; Lender Defs.' Mem. in Opp'n Pls.' Mot. Prelim. Inj., ECF No. 75; Government Defs.' Mem. in Supp. Defs.' Mot. to Dismiss ("Government Mem."),[7] ECF No. 82-1; Government Defs.' Mem. in Opp'n Pls.' Mot. Prelim. Inj., ECF No. 81.

On February 4, 2013, the Court issued a *Fox-Neal* Order, advising the *pro se* plaintiffs of their obligations to respond to the three motions to dismiss that had been filed at that time and warned them that they if they failed to respond in a timely fashion, the Court could grant the motions to dismiss as conceded. *See* Order dated Feb. 4, 2013, ECF No. 79; *see also Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988). The Court provided the plaintiffs with thirty days to respond to the three aforementioned motions to dismiss, *see* Order dated Feb. 4, 2013, at 4, but they failed to respond during that time period. Thus, the Court issued a show-cause Order, directing the plaintiffs, by April 1, 2013, to (1) respond to the three aforementioned motions, as previously directed; (2) file an appropriate motion for extension of time, *nunc pro tunc*, to cure the untimeliness of their response; and (3) set forth good cause why they failed to respond to the three motions to dismiss in a timely

---

immaterial because, as discussed below, the plaintiffs lack standing to bring this action, and therefore the Court lacks subject-matter jurisdiction to grant them the relief that they seek.

[4] The "MERS defendants" include PHH Mortgage Corporation, MERS, and MERSCORP Holdings, Inc.

[5] The "Bayview defendants" include Bayview Financial, LP and Bayview Loan Servicing LLC.

[6] The "lender defendants" include: Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Bank of America, N.A., JPMorgan Chase Bank, N.A., Ally Financial, Inc., Ally Bank, CitiBank, N.A., Ocwen Financial Corporation, Litton Loan Servicing, LP, Goldman Sachs & Co., OneWest Bank, FSB, Wells Fargo Bank, N.A., Deutsche Bank Aktiengesellschaft, Deutsche Bank National Trust Company, and HSBC Bank U.S.A., N.A.

[7] The "government defendants" include: Government National Mortgage Association ("Ginnie Mae") and the U.S. Secretary of the Treasury.

fashion. *See* Order dated Mar. 20, 2013, at 1, ECF No. 83. Finally, after the government defendants filed their motion to dismiss, the Court issued a second *Fox-Neal* Order to the plaintiffs, directing them to respond to the government's motion within thirty days or risk dismissal of the action. *See* Order dated Apr. 11, 2013, ECF No. 87. The plaintiffs filed what appears to be a joint response to all of the motions to dismiss on April 10, 2013, without explaining their gross untimeliness or requesting a retroactive extension of time, as directed by the Court. *See* Pls.' Joint Resp., ECF No. 85.

## II. LEGAL STANDARD

A federal court has "an affirmative obligation to consider whether the constitutional and statutory authority exist" for it to hear a case. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (internal quotation marks omitted). When a purported lack of jurisdiction stems from a lack of standing, however, the court "must assume that [the plaintiff] states a valid legal claim." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003). The proponent of jurisdiction bears the burden of proving that jurisdiction exists. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). While "the district court may consider materials outside the pleadings," it must "still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citations and internal quotation marks omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

District courts have an "obligation to construe pro se filings liberally." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002). Therefore, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Even though *pro se* parties "are entitled to a certain amount of solicitude in the conduct of litigation . . . such solicitude is not limitless and *pro se* litigants are not relieved of their obligation to comply with the applicable rules." *Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011). Importantly, "the requirement that courts liberally interpret *pro se* pleadings does not dispense with the constitutional requirement of standing." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011).

## III. DISCUSSION

The defendants have collectively advocated several grounds for the dismissal of this case, including (1) lack of subject-matter jurisdiction due to ineffective standing; (2) failure to state a claim upon which relief may be granted; and (3) ineffective service of process. *See, e.g.*, MERS Mem. at 3; Bayview Mem. at 3; Lenders' Mem. at 2, 16–17. The Court will begin by discussing the plaintiffs' standing to sue, since that is "a threshold, jurisdictional concept." *See Deutsche Bank Nat'l Trust Co. v. FDIC*, No. 12-5170, 2013 WL 2157865, at *4 n.4 (D.C. Cir. May 21, 2013).

Article III of the United States Constitution limits the federal judicial power to the resolution of "Cases" and "Controversies." U.S. CONST. art. III, § 2. "In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). In other words, "[t]he case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." *Allen v. Wright*, 468

U.S. 737, 750 (1984). "The Art[icle] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." *Id.*

As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact," *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). Second, there must be "a causal connection between the injury and the conduct complained of," *i.e.*, the injury alleged must be "fairly traceable to the challenged action of the defendant." *Id.* (internal quotation marks omitted). Finally, it must be likely that "the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). The purpose of the standing doctrine is, among other things, to ensure that plaintiffs have "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). In this way, "[s]tanding helps differentiate 'those disputes which are appropriately resolved through the judicial process' from policy disputes that are appropriately addressed by the elected branches." *Coal for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1278 (D.C. Cir. 2012). The Court will discuss each of these elements in turn.

**A. Injury-in-Fact**

For an injury-in-fact to satisfy the constitutional requirements, it must be "concrete," meaning "direct, real, and palpable—not abstract." *Pub. Citizen v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). The injury must also be "particularized," which means that it must be "personal, individual, distinct and differentiated—not generalized or undifferentiated." *Id.* When a plaintiff seeks prospective declaratory or injunctive relief, allegations of past harms are insufficient. *See, e.g.*, *Dearth v. Holder*, 641 F.3d 499, 501 (D.C.

Cir. 2011). Rather, in that circumstance, the plaintiff must allege a future injury that is "imminent," meaning that the injury is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). "While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege 'general factual allegations of injury resulting from the defendant's conduct' (notwithstanding 'the court presumes that general allegations embrace the specific facts that are necessary to support the claim')." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898–99 (D.C. Cir. 2002)).

In this case, construing the *pro se* complaint liberally, the plaintiffs allege three injuries: (1) foreclosures on their properties, *see* Compl. at 4; (2) overcharges to the plaintiffs on their title insurance, *see id.* at 8; and (3) the loss of "[i]nsurance payouts," *see id.* at 18. It appears, however, that each of these injuries is an economic harm that has already been suffered. Thus, even assuming that all three of these injuries are sufficiently concrete and particularized,[8] these allegations of past harm are insufficient to confer standing on the plaintiffs because the plaintiffs exclusively seek prospective injunctive relief. *See, e.g.*, Compl. at 25 ("Plaintiff[s] are not seeking monetary damages . . . . Plaintiff[s] are seeking preliminary injunctive relief or a restraining order to prevent lenders[s'] continued use of the altered Fannie/Freddie Mac Uniform Mortgage Agreement . . . ." (emphasis and capitalization omitted)); *see also Dearth*, 641 F.3d at 501 ("In a case . . . where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing.").[9] Therefore, in light of the relief the plaintiffs seek, they have failed to satisfy the injury-in-fact requirement.

---

[8] The concreteness of the plaintiffs' injuries is certainly suspect because the plaintiffs allege absolutely no facts about the circumstances or magnitude of their injuries.

[9] Aside from the three injuries listed above, to the extent that the plaintiffs seek to vindicate "the interests of the American public" by requiring the defendants to make loan documents clearer and easier to understand by removing

## B. Causation

As discussed above, for a plaintiff to satisfy Article III's standing requirements, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). This required causal connection, however, is lacking from the plaintiffs' Complaint. First, the conduct of only four of the twenty-two defendants is specifically discussed in the Complaint. *See, e.g.*, Compl. at 2, 9–10 (referencing defendants Fannie Mae, Freddie Mac, MERS, and the Secretary of the Treasury). Second, even assuming that the three injuries discussed above were sufficient to satisfy the injury-in-fact requirement in this case (which they are not), the plaintiffs do not allege any facts that would connect those injuries to the conduct of the defendants.[10] All of the alleged injuries appear to arise out of specific mortgage contracts,[11] yet the plaintiffs' scattershot allegations do not state any facts to suggest that any of the defendants actually originated any of these mortgages. *See* Compl. at 2 (alleging that the documents used in plaintiffs' mortgages "were universally used"). Thus, there are no factual

MERS as a mortgagee, *see, e.g.*, Compl. at 27, the plaintiffs merely allege a "generalized grievance," and such a grievance, "no matter how sincere, is insufficient to confer standing." *See Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (slip op. at 7). A litigant "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. Such grievances are "more appropriately addressed in the representative branches," rather than the courts. *See Allen*, 468 U.S. at 751.

[10] The plaintiffs assert that "[d]efendants are mistaken that Plaintiffs must have suffered injuries in order to sue" because "[t]here are millions of Americans . . . [who] could sue or have the right to sue." *See* Pls.' Joint Resp. at 2. The Court construes this as an assertion that the plaintiffs' claims should proceed on the basis of third-party standing. It is a "fundamental restriction on our authority," however, that "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). There is a narrow exception permitting third-party standing where: (1) the plaintiff has suffered an injury-in-fact, (2) the plaintiff is closely related to the third party, and (3) the third party is unable to bring the lawsuit him or herself. *See id.* at 410–11. As discussed above, the plaintiffs in the instant case have not alleged a sufficient injury-in-fact, and thus they cannot satisfy the first requirement of third-party standing. *See id.* Additionally, the plaintiffs have not alleged that there is "a hindrance to the third part[ies'] ability to protect [their] own interests." *See id.* As a result, the plaintiffs are fundamentally mistaken in asserting that they are not required to have suffered injuries in order to sue. *See* Pls.' Joint Resp. at 2.

[11] Indeed, the plaintiffs' injuries would *need* to be associated with specific mortgages in order for them to be "particularized," and thus cognizable under Article III. *See Lujan*, 504 U.S. at 560.

allegations tying any of the defendants' conduct to the particular injuries allegedly suffered by the plaintiffs.[12] *See, e.g.*, *Molina v. FDIC*, 870 F. Supp. 2d 123, 130 (D.D.C. 2012) ("While [the] plaintiff levels some troubling accusations about the processes [the defendant] uses . . . he fails to allege that he himself suffered any injury as a result of [the defendant's] practices.").

### C. Redressability

The most glaring deficiency in the plaintiffs' standing is their failure to allege facts to establish that it is "likely . . . that the injur[ies they allege] will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). As referenced above, the Complaint seeks sweeping prospective injunctive relief, including (1) an injunction "preventing all Lending Institutions from using the current Fannie Mae/Freddie Mac uniform mortgage instrument wherein MERS is an additional Party of Interest," (2) a nationwide injunction staying all foreclosure proceedings; and (3) "an Order requiring Fannie Mae/Freddie Mac to draft a new version" of the uniform mortgage instrument "wherein the 'Mortgagee' be changed to 'Mortgage Tracking Company' and plain language definitions be offered." Compl. at 27–28. None of this prospective injunctive relief—broad as it may be— can possibly remedy the harms alleged by the plaintiffs, all of which have already occurred. Therefore, the plaintiffs have failed to establish the constitutional requirement of redressability.

### D. Motion to Amend the Complaint

The plaintiffs have also moved to amend their Complaint. *See* ECF No. 49. The Federal Rules of Civil Procedure state that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The Court, however, need not grant leave to amend when

[12] The plaintiffs state that the mortgage contracts they signed were "presumably created by Fannie Mae/Freddie Mac," *see* Compl. at 2, but this speculative and conclusory allegation is insufficient to establish that the plaintiffs' alleged injuries are "fairly traceable" to the conduct of Fannie Mae Freddie Mac, or any other defendant for that matter. Specifically, the plaintiffs do not allege that Fannie Mae or Freddie Mac foreclosed on their mortgages, overcharged them for title insurance, or deprived them of "insurance payouts," and therefore there is no factual connection between the injuries alleged by the plaintiffs and the conduct of defendants Fannie Mae or Freddie Mac.

the proposed amendment would be futile. *See, e.g.*, *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam). In this case, the Court denies the plaintiffs' motion to amend for two reasons. First, the plaintiffs failed to include with their motion "an original of the proposed pleading as amended," which is required by this Court's local rules. *See* LCvR 7(i). Second, even if the plaintiffs had complied with the local rules in submitting their motion, the proposed amendments would appear to be futile because they would not cure the plaintiffs' lack of standing. As the plaintiffs state in their motion, the proposed "additional Plaintiffs share the same interests, assert the same claims, and seek the same relief as the initial Plaintiffs stated in their original Complaint." *See* Pl.'s Mot. to Amend at 4. The plaintiffs also make clear that "the only change made by the Second Amended Complaint is the Identification of the Additional Plaintiffs." *Id.* Therefore, the proposed amendments would be futile.

* * *

As the foregoing discussion reveals, the plaintiffs do not have standing. This conclusion does not undermine the reality that the plaintiffs have experienced tough times, from being "unemployed," and "stricken with illness," being "victims of accidents," and "parties in a divorce," which resulted in their inability "to meet their mortgage payments," and ultimately resulted in foreclosure. *See* Compl. at 2. The Court simply concludes that it lacks jurisdiction over the plaintiffs' claims because the plaintiffs have not established that they have standing to seek the broad, prospective injunctive relief outlined in their Complaint. Accordingly, it is hereby

**ORDERED** that this case is DISMISSED for lack of subject-matter jurisdiction, *see* FED. R. CIV. P. 12(h); and it is further

**ORDERED** that the following motions are GRANTED insofar as they seek dismissal under Federal Rule of Civil Procedure 12(b)(1): MERS defendants' Motion to Dismiss, ECF No. 68; Defendants Bayview Financial, LP and Bayview Loan Servicing LLC's Motion to Dismiss, ECF No. 70; Certain Defendants' Joint Motion to Dismiss the Complaint, ECF No. 74; and Federal Government Defendants' Motion to Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 82; and it is further

**ORDERED** that the Certain Defendants' Joint Motion to Dismiss the Complaint, ECF No. 71, is DENIED AS MOOT because it is an earlier, essentially duplicative version of ECF No. 74; and it is further

**ORDERED** that Plaintiff[s'] Motion to Amend Caption in Complaint, ECF No. 49, is DENIED.[13]

**SO ORDERED**

*This is a final and appealable Order.*

Date: July 16, 2013

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

[13] Since the Court lacks subject-matter jurisdiction, the Court does not reach the merits of the plaintiffs' application for preliminary injunction.